## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

In re

Case No.  07-30454

ROBERT LOWELL COLLINS
BRENDA JOYCE COLLINS
a/k/a BRENDA JOYCE SOLOMON-COLLINS

Debtors

## MEMORANDUM ON OBJECTION TO
## CONFIRMATION OF CHAPTER 13 PLAN

**APPEARANCES:**      ALAN C. LEE, ESQ.
              Post Office Box 1357
              Morristown, Tennessee  37816-1357
              Attorney for Debtors

              WM. STANTON MASSA, III, ESQ.
               Post Office Box 1515
               Morristown, Tennessee  37816
              WILLIAM TIMOTHY HILL, ESQ.
               201 Fourth Avenue North
               Suite 1800
               Nashville, Tennessee  37219
               Attorneys for Beneficial Tennessee, Inc.

              GWENDOLYN M. KERNEY, ESQ.
               Post Office Box 228
               Knoxville, Tennessee  37901-0227
               Chapter 13 Trustee

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

This contested matter is before the court on the Objection to Confirmation of Chapter 13 Plan (Objection to Confirmation) filed on March 29, 2007, by Beneficial Tennessee, Inc. (Beneficial), grounded upon its contention that the Debtors' proposed Chapter 13 Plan impermissibly modifies its rights as evidenced by the documentation supporting its claim, which is secured by the Debtors' principal residence. A preliminary hearing was held on April 11, 2007, and a trial was initially scheduled for May 16, 2007, and later continued to June 13, 2007. Prior to the commencement of the June 13, 2007 trial, the parties advised the court that all issues could be resolved on stipulations and briefs and that an evidentiary hearing would not be necessary. On June 14, 2007, the court entered an Order striking the trial and reserving decision.

The record before the court consists of the Joint Statement of Issues and Stipulations as to Facts and Documents Regarding the Objection to Confirmation of Debtors' Chapter 13 Plan Filed by Beneficial Tennessee, Inc. (Joint Stipulations) filed by the parties on June 7, 2007, stipulating to facts material to the court's resolution of the issues before it and to the admission of the following exhibits into evidence: (A) the proof of claim filed by Beneficial on March 27, 2007; (B) the Loan Repayment and Security Agreement dated March 22, 2001, evidencing the terms of Beneficial's loan to the Debtors and granting Beneficial a security interest in the Debtors' residence; and (C) a Deed of Trust dated March 22, 2001, signed by the Debtors, pledging their residence as security for the Beneficial loan. The court also takes judicial notice, pursuant to Rule 201 of the Federal Rules of Evidence, of other material undisputed facts of record in the Debtors' bankruptcy case file. All issues have been fully briefed.

This is a core proceeding. 28 U.S.C. § 157(b)(2)(L) (2005).

2

# I

On March 22, 2001, the Debtors obtained a loan from Beneficial in the principal amount of

$95,561.05, which is secured by their residence at 209 Hayter Drive, Morristown, Tennessee

(Residence).   Under the terms of the Loan Repayment and Security Agreement signed by the

Debtors, the loan was to be repaid over fifteen years at 13.840% interest with monthly installment

payments of principal and interest in the amount of $1,262.37 each, beginning on April 22, 2001,

with the final payment due on March 22, 2016.  The Deed of Trust also executed by the Debtors on

March 22, 2001, granting Beneficial a lien in the Residence, requires the Debtors, unless waived in

writing by Beneficial, to include with each monthly payment of principal and interest an amount to

be held in escrow by Beneficial equal to one-twelfth of the Debtors' annual homeowners insurance

premium and one-twelfth of the annual property taxes attributable to the Residence.

# II

The Debtors filed the Voluntary Petition commencing their bankruptcy case under Chapter

13 on February 14, 2007.  At the time they filed their petition, the Debtors owed Beneficial

$95,379.01, including a prepetition arrearage of $10,894.02.[1]

The Debtors' plan, filed with their petition on February 14, 2007, proposes weekly payments

to the Chapter 13 Trustee of $450.00 over the sixty-month life of the plan, plus all tax refunds

exceeding $1,000.00, resulting in a projected dividend of 20-70 percent to nonpriority unsecured

---

[1] Beneficial filed two proofs of claim, the first on March 23, 2007, in the amount of $95,379.01, and the second on March 27, 2007, in the amount of $95,600.04.  Because the parties stipulate at paragraph 6 of the Joint Stipulations the amount of Beneficial's claim at $95,379.01, that amount is the figure the court will use.

creditors (Proposed Plan).  The Proposed Plan provides for payment of Beneficial's allowed secured

claim at Section 12(a) as follows:

> (a) **MORTGAGE and/or LONG TERM LIEN** claim balances survive the plan and
> the Trustee shall not pay any future mortgage increases or decreases due to escrow
> and interest rate changes, unless the plan is modified to change such amounts.  The
> Debtors own a **House and lot, located at 209 Hayter Dr, Morristown, TN 37813,**
> which is subject to a first mortgage or long term lien held by **a Mortgage or Asset
> Backed Securitized Trust and serviced by Beneficial**, and which shall be paid by
> the Trustee in monthly maintenance payments of **$1,262.37.**[2]  In addition to the
> maintenance payment, the Trustee shall pay a claim for mortgage/lien arrearage in
> the approximate amount of **$13,000.00**, absent an objection by the debtors, in full in
> monthly installments of **$260.00** at **0.00%** interest.[3]  Payments on these claims will
> begin **May 2007**; however, the mortgage payments will not be disbursed pending
> payment in full of attorney fees in paragraph 4(a) above.  Any undisbursed payments
> will be accrued and paid under the plan as funds are available.
>
> Confirmation of the plan shall impose an affirmative duty and legal obligation on the
> holders and/or the servicers of any claims secured by liens, mortgages and/or deeds
> of trust on the principal residence of the Debtors to do all of the following:
>
> (1)  To apply the payments received from the trustee on the pre-petition arrearages,
> if any, and only to such arrearages.  For purposes of this plan, the "pre-petition"
> arrears shall include all sums included in the "allowed" proof of claim and shall be
> included in a "corporate advance" equal to the total of all sums included in the said
> claim.  During the term of the plan, payments from the trustee shall be credited
> against the "corporate advance" account.  The "corporate advance arrearage account"
> shall have a "0" balance upon entry of the Discharge Order in this case.
>
> (2)  To deem the pre-petition arrearages as contractually cured upon confirmation of
> the plan, thereby precluding the imposition of late payment charges or other

---

[2] This amount represents the monthly installment payment of principal and interest required under the March 22, 2001 Loan Repayment and Security Agreement.  The court finds nothing at Section 12(a) or any other section of the Proposed Plan that provides for the Chapter 13 Trustee to make an escrow payment to Beneficial during the life of the plan.  Because Schedule J to the Debtors' petition reflects a monthly expense item of $50.00 for "Property taxes" and $75.00 for "Homeowner's" insurance, and because both the Hamblen County Trustee and Clerk and Master of the Hamblen County Chancery Court have filed proofs of claim for prepetition property taxes delinquent from 2003 through 2006, the court presumes that the Debtors, for whatever reason, have not been making, nor do they propose to make through the Proposed Plan, the escrow payment to Beneficial required under the Deed of Trust.

[3] Beneficial does not object to the treatment of its arrearage claim through the Proposed Plan.  In fact, however, Beneficial's arrearage claim is in a lesser amount, $10,894.02, than the $13,000.00 anticipated by the Debtors at the time they formulated the Proposed Plan.

defaulted-related fees and services based solely on the pre-petition default or defaults. Such action shall be taken by making a "corporate advance" in a sufficient amount to "cure" the pre-petition arrears as established by the "allowed" proof of claim.

(3) To apply the direct post-petition monthly mortgage payments paid by the trustee or by the Debtors to the month in which they were designated to be made under the plan or directly by the Debtors, whether or not such payments are immediately applied to the outstanding loan balance or are placed into some type of suspense, forbearance or similar account. All such post-petition payments must be first applied to the outstanding post-petition interest and then to the principal balance and may not be used for any other purpose without the approval of the Bankruptcy Court after proper notice and a hearing.

(4) To notify the trustee, the Debtors and the attorney for the Debtors in writing of any changes in the interest rate for any non-fixed rate or any adjustable rate mortgages and the effective date of any such adjustment or adjustments. The failure to comply with such notice requirements shall constitute a waiver of any increase in the rate until such notice is provided. In the event the rate should be reset to a rate lower than the rate as of the petition date, then any failure to provide notice as herein provided shall constitute a violation of 524(i) to the extent that the [Debtors] suffer[] aggregate damages of more than $50.00.

(5) To notify the trustee, the Debtors and attorney for the Debtors in writing of any change in the property taxes and/or the property insurance premiums that would either increase or reduce the escrow portion, if any, of the monthly mortgage payments and the effective date of any such adjustment or adjustments. The failure to comply with such notice requirements shall constitute a waiver of any right to recover any enhanced escrow payments to recover any such increases until such notice is provided, on the condition that it is provided more than 11 months before the completion of the plan.

(6) To refrain from directly paying or attempting to pay any pre-petition tax obligation that the Debtors have included in their plan to be paid under their plan unless a motion is filed to modify the plan with adequate notice and hearing or unless a notice of assignment of the tax claim is filed from the taxing authority to the servicer and/or holder of the mortgage loan(s).

(7) To refrain from ever assessing, charging, imposing, advancing or billing any type of fees or charges (such a legal fees, broker price opinion fees, property inspection fees, property preservation fees, proof of claim fees, notice of appearance fees, plan review fees, or any type of legal fees, or any other type of fee or charge) to the mortgage loan of the Debtors either post-petition and pre-confirmation, either post-confirmation and pre-discharge, or post-discharge unless such fees or charges have been approved by the Bankruptcy Court upon filing of a proper application for the

5

approval of such fees and charges under Rule 2016(a) of the Federal Rules of
Bankruptcy Procedure and after adequate notice of hearing.  To the extent such fees
are not approved, but are provided in any type of notice to the Debtors, such action
shall be deemed to constitute a material violation of this provision and a violation of
either the automatic stay or the discharge injunction, whichever provision may be
applicable.

Violations of this Section.

Any violation of this provision shall be deemed a willful violation of 11 U.S.C.
Section 524(i) in the event that the mortgage loan or loans is not serviced in a manner
strictly in compliance with this provision of the plan and to the extent the improper
servicing results in improper fees and charges of more than $50.00.

Application of Section 524(i) of the Bankruptcy Code.

The Debtors further specifically invoke and intend for this plan provision to invoke
and to reserve all of the Debtors['] rights under the provisions of 11 U.S.C. Section
524(i).

PROP. PLAN at 3-5.

Pursuant to the Joint Stipulations, the parties state the issue before the court to be "[w]hether

11 U.S.C. § 524(i), as added by the Bankruptcy Abuse Prevention and Consumer Protection Act of

2005 [BAPCPA], effective on October 17, 2005, allows a debtor to propose plan language that

outlines the procedure for crediting payments received by a mortgage lender or servicer under a plan

to the claims for both the ongoing monthly mortgage payment and the mortgage arrearages without

modifying the rights of the holders of secured claims secured only by a security interest in real

property that is the Debtors' principal residence in violation of 11 U.S.C. § 1322(b)(2)[.]"

# III

Section 524 of the Bankruptcy Code was amended by BAPCPA to include subsection (i), which provides as follows:

> (i) The willful failure of a creditor to credit payments received under a plan confirmed under this title, unless the order confirming the plan is revoked, the plan is in default, or the creditor has not received payments required to be made under the plan in the manner required by the plan (including crediting the amounts required under the plan), shall constitute a violation of an injunction under subsection (a)(2)[4] if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor.

11 U.S.C. § 524(i) (2005). Clearly, based upon the wording of § 524(i), a creditor that willfully fails to credit payments received under a confirmed Chapter 13 plan shall, to the extent that failure harms the debtor, be in violation of the discharge injunction.[5] This subsection does not provide a basis for the incorporation of proposed language in a Chapter 13 plan. Instead, it merely provides debtors a

---

[4] (a)  A discharge in a case under this title—

. . . .

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]

11 U.S.C. § 524(a)(2) (2005).  By virtue of this permanent injunction, debtors are no longer liable for any prepetition debts.  *See In re Leonard*, 307 B.R. 611, 613 (Bankr. E.D. Tenn. 2004) ("Section 524(a) was designed to 'ensure that once a debt is discharged, the debtor will not be pressured in any way to repay it.'") (quoting *Stoneking v. Histed (In re Stoneking)*, 222 B.R. 650, 652 (Bankr. M.D. Fla. 1998) (quoting H.R. REP., NO. 595, 95th Cong., 1st Sess. at *364 (1977))).

[5] The court finds no case law expressly addressing application of § 524(i).  Additionally, as with the majority of BAPCPA, legislative history is scarce.  Nevertheless, the Senate Report clearly states that "[t]he Committee intends the term 'willful' to encompass only deliberate refusals to credit payments under circumstances where it is clear that the creditor is aware of its legally binding responsibility to do so."  S. REP. NO. 105-253, 105th Cong., 2nd Sess. at *36 (1998).

potential remedy, post-discharge, if a creditor has failed to honor the terms of a confirmed plan by not properly crediting payments received as required by the plan.[6]

To resolve the real issue between the Debtors and Beneficial, i.e., whether Section 12(a) of the Proposed Plan violates provisions of the Bankruptcy Code and renders the plan unconfirmable, the focus is not upon potential violations of § 524(i), but upon the requirements for and effects of confirmation. "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan[,]" 11 U.S.C. § 1327(a) (2005), and following confirmation, the plan "is treated as the exclusive and transcendent relationship between the debtor and the creditor." *Salt Creed Valley Bank v. Wellman (In re Wellman)*, 322 B.R. 298, 301 (B.A.P. 6th Cir. 2004).

Accordingly, "'creditors are limited to those rights that they are afforded by the plan, [and] they may not take actions to collect debts that are inconsistent with the method of payment provided for in the plan.'" *United States v. Richman (In re Talbot)*, 124 F.3d 1201, 1209 (10th Cir. 1997) (quoting 8 Collier on Bankruptcy ¶ 1327.02[1] (Lawrence P. King ed., 15th ed. 1996)). "[A] creditor cannot thereafter assert any other interest than that provided for him in the confirmed plan and that all of the issues of adequate protection, lack of equity, . . . etc., could and should have been raised in objections to confirmation." *Wellman*, 322 B.R. at 301 (quoting *Ford Motor Credit Co.*

---

[6] The Sixth Circuit has determined that "§ 524 does not impliedly create a private right of action[,]" *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 422-23 (6th Cir. 2000), and thus, "when a violation of the discharge injunction does occur, a debtor's sole avenue of recourse – and the one for which the traditional remedy for a violation of a court order – is to bring an action against the creditor for contempt." *In re Perviz*, 302 B.R. 357, 370 (Bankr. N.D. Ohio 2003).

*v. Lewis (In re Lewis)*, 8 B.R. 132, 137 (Bankr. D. Idaho 1981)).  If a party in interest does not agree

with its treatment in a proposed plan, it may object to confirmation.  11.U.S.C. § 1324 (2005).[7]

Material to this contested matter are § 1322(b)(2), which permits debtors to modify the rights

of holders of both secured and unsecured claims excepting the claims of creditors whose claims are

secured by the debtor's homestead, and § 1322(b)(5), which allows a debtor to manage long term

secured and unsecured debt by curing a prepetition default and maintaining payments during the

pendency of the plan.  Specifically, these sections provide that a plan may

> (2)  modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence*, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

> . . . .

> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due[.]

11 U.S.C. § 1322(b)(2), (5) (2005) (emphasis added).

For a creditor holding a claim secured only by a security interest in real property that is the

debtor's principal place of residence, the underlying secured claim is not discharged following

completion of the Chapter 13 plan.  11 U.S.C. § 1328(a)(1) (2005).

---

[7] A creditor that does not object to a Chapter 13 plan is deemed to have accepted the terms within, *In re Vankell*, 311 B.R. 205, 210 (Bankr. E.D. Tenn. 2004), so a confirmed Chapter 13 plan is, therefore, res judicata, and, absent a default under the terms of the confirmed plan, creditors are precluded from making post-confirmation assertions of any interest other than those specifically provided for in the plan.  *Ruskin v. DaimlerChrysler Servs. N. Am., LLC (In re Adkins)*, 425 F.3d 296, 302 (6th Cir. 2005); *In re Crowley*, 258 B.R. 587, 591 (Bankr. D. Vt. 2000).  This accomplishes the goals of § 1327(a) by granting "finality to a confirmation order so that all parties may rely upon it without concern that actions which they may thereafter take could be upset because of a later change or revocation of the order."  *In re Thaxton*, 335 B.R. 372, 374 (Bankr. N.D. Ohio 2005).

# IV

On March 29, 2007, Beneficial filed its Objection to Confirmation, contending, generally, that Section 12(a) of the Proposed Plan violates the anti-modification provisions of § 1322(b)(2). Beneficial argues in its brief that the contractual obligations between it and the Debtors are specifically set forth in the March 22, 2001 Loan Repayment and Security Agreement and the Deed of Trust, and that the Proposed Plan attempts to impose duties upon it that are not included within those documents or provided for by the Bankruptcy Code.

The focus of § 1322(b)(2) is upon the "rights" of the creditor and not upon the creditor's claim.  Section 1322(b)(2)

> does not state that a plan may modify "claims" or that the plan may not modify "a claim secured only by" a home mortgage.  Rather, it focuses on the modification of the "rights of the holders" of such claims.
>
> . . . .
>
> The bank's "rights," therefore, are reflected in the relevant mortgage instruments, which are enforceable under [state] law.  They include the right to repayment of the principal in monthly installments over a fixed term at specified adjustable rates of interest, the right to retain the lien until the debt is paid off, the right to accelerate the loan upon default and to proceed against petitioners' residence by foreclosure and public sale, and the right to bring an action to recover any deficiency remaining after foreclosure.  These are the rights that were "bargained for by the mortgagor and the mortgagee," and are rights protected from modification by § 1322(b)(2).

*Nobleman v. Am. Sav. Bank*, 113 S. Ct. 2106, 2109-2110 (1993) (citations omitted).

As noted by the *Nobleman* court, however,

> [t]his is not to say, of course, that the contractual rights of a home mortgage lender are unaffected by the mortgagor's Chapter 13 bankruptcy.  The lender's power to

10

enforce its rights—and, in particular, its right to foreclose on the property in the event of default—is checked by the Bankruptcy Code's automatic stay provision. In addition, § 1322(b)(5) permits the debtor to cure prepetition defaults on a home mortgage by paying off arrearages over the life of the plan "notwithstanding" the exception in § 1322(b)(2). These statutory limitations on the lender's rights, however, are independent of the debtor's plan or otherwise outside § 1322(b)(2)'s prohibition.

*Nobleman*, 113 S. Ct. at 2110 (citations and footnote omitted); *see also* 11 U.S.C. § 1322(b)(11) (A plan may "include any other appropriate provision not inconsistent with this title.").

As made clear by *Nobleman*, Beneficial's prepetition arrearage claim of $10,894.02 has its genesis under § 1322(b)(5) and its treatment is, therefore, not controlled by the anti-modification provisions of § 1322(b)(2). The Debtors, therefore, have some flexibility under the Proposed Plan in their treatment of the arrearage that they do not enjoy under § 1322(b)(2)'s anti-modification language regarding the balance of Beneficial's claim.

## V

Various courts have adopted form plans in an attempt to prevent post-discharge late charges and/or fees from being assessed against a debtor that, under a confirmed Chapter 13 plan, should have been deemed current.

In the Northern District of Illinois, all Chapter 13 debtors are required to utilize a "model plan" form, which was "adopted to reduce the number of foreclosures filed against debtors immediately following the conclusion of their Chapter 13 case[s]," and provides in part, material to this contested matter, as follows:

11

B.  General Provisions. . . .

2.  The rights of holders of claims secured by a mortgage on real property of the debtor, proposed to be cured in Paragraph 4 of Section E of this plan, including the right to reimbursement for costs of collection and other payment obligations of the debtor accruing after the filing of this bankruptcy case, shall be modified only to the following extent:

(a) *Prepetition defaults*.  If the debtor pays the cure amount specified in Paragraph 4 of Section E, while timely making all required postpetition payments, the mortgage will be reinstated according to its original terms, extinguishing any right of the holder to recover any amount alleged to have arisen prior to the filing of the petition.

(b) *Postpetition defaults*. Within 30 days of issuing the final payment of the cure amount specified in Paragraph 4 of Section E, the standing trustee shall serve upon the holder, the debtor, and any attorney for the debtor a notice stating (1) that the cure amount has been paid, satisfying all prepetition mortgage obligations of the debtor, (2) that the holder is required to treat the mortgage as reinstated and fully current unless the debtor has failed to make timely payments of postpetition obligations, (3) that if the debtor has failed to make timely payments of any postpetition obligations, the holder is required to itemize all outstanding payment obligations as of the date of the notice, and file a statement of these obligations with the court, giving notice to the standing trustee, the debtor, and any attorney for the debtor, within 60 days of service of the notice from the trustee (or such longer time as the court may order), (4) that if the holder fails to file and serve a statement of outstanding obligations within the required time, the holder is required to treat the mortgage as reinstated according to its original terms, fully current as of the date of the trustee's notice, and (5) that if the holder does serve a statement of outstanding obligations within the required time, the debtor may (i) within 30 days of service of the statement, challenge the accuracy of the statement by motion filed with the court, on notice to the holder and the standing trustee, with the court resolving the challenge as a contested matter, or (ii) propose a modified plan to provide for payment of additional amounts that the debtor acknowledges or the court determines to be due.  To the extent that amounts set forth on a timely filed statement of outstanding obligations are not determined by the court to be invalid or are not paid by the debtor through a modified plan, the right of the holder to collect these amounts will be unaffected.  No liability shall result from any nonwillful failure of the trustee to serve the notice required by this subparagraph.

12

> (c) *Costs of collection*. Costs of collection, including attorneys' fees, incurred
> by the holder after the filing of this bankruptcy case and before the final
> payment of the cure amount specified in Paragraph 4 of Section E may be
> added to that cure amount pursuant to order of the court on motion of the
> holder.  Otherwise, any such costs of collection shall be claimed pursuant to
> subparagraph (b) above.

*In re Wilson*, 321 B.R. 222, 223-25 (Bankr. N.D. Ill. 2005).  Under this model plan, which "simply

discourages a home lender from surprising a debtor with a foreclosure action immediately following

the Chapter 13 case based on a default that existed at or before the end of the bankruptcy," and was

crafted following input from both debtor and creditor attorneys, "debtors who have timely made all

required postpetition payments can be assured that they have paid all arrearages and accrued charges,

and will achieve a fresh start with plan completion and their Chapter 13 discharge."  *Wilson*, 321

B.R. at 225-26.

In response to a challenge of this language as violating the anti-modification provision of

§ 1322(b)(2), the court held:

> That is all that Paragraph B(2) of the Chapter 13 Model Plan purports to do –
> provide a mechanism for resolving disagreements as to a default or amounts owed
> that accrued during the Chapter 13 case.  By providing a procedure for the parties to
> use to definitively ascertain what a debtor owes his home lender, the Model Plan does
> not modify a mortgage holder's rights in violation of § 1322(b)(2).  Instead, it merely
> provides a framework within which to enforce those rights according to the loan
> document terms.  Subparagraph (b) does not modify the mortgage holder's right to
> charge late fees, attorneys' fees, or assess other collection costs as provided in the
> contractual agreement between the creditor and the debtor.  Instead, under the Model
> Plan, once the Chapter 13 trustee distributes the final payment of the arrearage cure
> amount, he must notify the mortgage holder that any fees and costs permitted under
> the loan documents, which accrued during the Chapter 13 case, must be itemized
> within 60 days or forfeited.

*Wilson*, 321 B.R. at 225.  Nevertheless, "the mortgage is not reinstated according to its original terms

unless the Chapter 13 debtor pays the specified cure amount. . . . [The model plan] does not reduce

13

the size or timing of installment payments under the plan or under the mortgage; instead, it is a provision that provides a mechanism for the debtor to cure any defaults, as plans may do pursuant to § 1322(b)(5)." *Wilson*, 321 B.R. at 227; *accord In re Lammy*, 356 B.R. 168, 172 (Bankr. E.D. Pa. 2006) ("In adding § 1322(e)'s directive that the parties' contracts determine the amount of the arrearage, the intent of Congress was 'that a cure pursuant to a plan should operate to put the debtor in the same position as if the default had never occurred.'") (quoting 140 CONG. REC. H10752-01, H10770 (Oct. 4, 1994) (section-by-section analysis by Congressman Brooks)).[8]

There is also no prohibition against language providing that entry of a discharge order following payment in full of an arrearage claim under a plan "reinstate[s] the loan as timely paid up as of the date of discharge[.]" *McDonald v. Bank Fin. (In re McDonald)*, 336 B.R. 380, 385 (Bankr. N.D. Ill. 2006). In *McDonald*, the confirmed plan contained the following language:

> The rights of holders of claims secured by a mortgage on real property of the debtor, proposed to be cured in Paragraph 4 of Section E of this plan, shall be modified only to the extent that curing the default as specified in that paragraph, while making all required postpetition payments, shall result in reinstatement of the mortgage according to its original terms, with no default in scheduled payments.

*McDonald*, 336 B.R. at 382. The debtor filed an adversary proceeding seeking an injunction when the defendant "refuse[d] to recognize the binding nature of the completed Plan terms and [in particular did] not recognize that it [was] bound by the arrearage amount specified in the Plan that it did not object to before the Plan was confirmed and [had] not otherwise contested by attacking the

---

[8] "[C]harges are not 'necessary to cure' within the purview of § 1322(e) unless they are (1) required by the underlying agreement and (2) not prohibited by state law." *Wells Fargo Bank Minn. N.A. v. Guarnieri,* 308 B.R. 122, 124 (D. Conn. 2004) (quoting *In re Guarnieri,* 297 B.R. 365, 368 (Bankr. D. Conn. 2003)).

discharge order[,]" by scheduling a foreclosure, asserting that the prepetition arrearage had not been paid in full. *McDonald*, 336 B.R. at 382.

The court, noting the binding effect of § 1327, held that "[o]nce a plan is confirmed, it acts like a court-approved contract or consent decree that binds the debtor and all of the creditors." *McDonald*, 336 B.R. at 383. Finding that the plan did not reduce the bank's claim but only provided that the mortgage was cured and reinstated if the arrearage claim provided for in the plan was paid in full, the court determined that "the effect of the discharge in this case is only to deaccellerate any plan default and reinstate the loan as timely paid up as of the date of discharge herein." *McDonald*, 336 B.R. at 385.

Other courts have also accepted the premise that a mortgage holder may be directed to credit payments by distinguishing between prepetition and post-petition payments, by requiring payments be credited when received or in an otherwise timely manner, and by requiring a creditor show that payments under a plan are current. *See generally Nosek v. Ameriquest Mortgage Co. (In re Nosek)*, 363 B.R. 643 (Bankr. D. Mass. Mar. 6, 2007) (awarding $250,000.00 in emotional distress damages and $500,000.00 in punitive damages pursuant to 11 U.S.C. § 105(a) (2005) for violating § 1322(b) of the Bankruptcy Code).

> "The purpose of a Chapter 13 plan is to allow a debtor to pay arrears during the pendency of the plan while continuing to make payments at the contract rate. Payments made during the pendency of the Chapter 13 plan should have been applied by [the lender] to the current payments [then] due and owing with the arrearage amounts [received from the Chapter 13 Trustee] to be applied to the back payments. [The lender] cannot use its accounting procedures to contravene the terms of a confirmed Chapter 13 plan and the Bankruptcy Code."

15

*Nosek*, 363 B.R. at 645 (quoting *In re Nosek*, 2006 Bankr. LEXIS 1279, at *48, 2006 WL 1867096,

at *13 (Bankr. D. Mass. June 30, 2006) (quoting *In re Rathe*, 114 B.R. 253, 257 (Bankr. D. Idaho

1990)).

To remedy these deficiencies, prior to awarding both compensatory and punitive damages

to the debtor, the court held that

> [A creditor] must adjust its accounting practices because of [a debtor's] bankruptcy.
> The Bankruptcy Code is not a cafeteria; lenders do not decide which of its provisions
> apply to them.  Once a debtor files for Chapter 13, the Bankruptcy Code, and only the
> Bankruptcy Code, dictates the protections (such as the preemption of state law
> remedies) afforded to the lender and the obligations (such as the separate accounting
> for pre-and-post petition payments) required of them.
>
> . . . .
>
> [Creditors are] not excused from doing it right, even if it is an administrative burden.
> It is not sufficient that [the creditor] only internally accounted [the debtor] with
> having made the payments and internally considered [the debtor] current.  This must
> be reflected on [the creditor's] external payment history, which is shared with the
> debtor and the outside world . . . [.]

*Nosek*, 363 B.R. at 649-50.[9]

Likewise, courts have approved uniform plans that direct how late fees will be assessed in

connection with the payments received from the Chapter 13 trustee.  In the Southern District of

Texas, the Chapter 13 trustees adopted, and the bankruptcy judges unanimously approved, Home

Mortgage Payment Procedures and a Uniform Plan.  *See In re Perez*, 339 B.R. 385, 402-03 (Bankr.

S.D. Tex. 2006).  Paragraph 11 of the Home Mortgage Payment Procedures states that:

---

[9] Similarly, the failure to comply with the federal Real Estate Settlement Procedures Act concerning notices
regarding escrow account information and mortgage payment changes can result in the waiver of a right to assert a claim
to a post-petition debt for those amounts.  *See Craig-Likely v. Wells Fargo Home Mortgage (In re Craig-Likely)*, 2007
U.S. Dist. LEXIS 29042, at *11-12 (E.D. Mich. Mar. 2, 2007).

> Amounts received by the holder of the ongoing mortgage prior to confirmation must
> be applied by the holder to the next payment due without penalty of the terms of the
> note; or the holder must notify the trustee in writing that it waives all late charges that
> accrue after the order for relief in this case.  Amounts received by the holder of the
> ongoing mortgage after confirmation must be applied in accordance with the plan.

*Perez*, 339 B.R. at 402.  This paragraph relates to the following paragraph of the Uniform Plan:

> The Secured Claims held by secured creditors holding a claim secured only by a
> security interest in real property that is the debtor(s)' residence (other than the
> arrearage claims set forth in the above table) and other claims treated under
> § 1322(b)(5) will be paid in accordance with the pre-petition contract held by the
> holder of the secured claim.  The first such payment is due on the first payment due
> date under the promissory note (after the date this bankruptcy case was filed).  During
> the term of the plan, these payments will be made through the chapter 13 trustee in
> accordance with procedures adopted from time to time by the chapter 13 trustee and
> approved by the Court.  Each holder of a claim that is paid pursuant to this paragraph
> must elect to either (i) apply the payments received by it to the next payment due
> without penalty under the terms of the holder's pre-petition note; or (ii) waive all late
> charges that accrue after the order for relief in this case.  Any holder that fails to file
> an affirmative election within 30 days of entry of the order confirming this plan has
> waived all late charges that accrue after the order for relief in this case.
> Notwithstanding the foregoing, the holder may impose any late charge that accrues
> following an event of default of a payment due under paragraph 1 of this Plan.

*Perez*, 339 B.R. at 403.

With respect to the argument that the foregoing plan provision was an improper modification

of the creditor's rights under § 1322(b)(2), the court explained that

> The Procedures allow the mortgagee to assess late charges for the first month.
> Requiring the mortgagee to apply the late payment to the next payment due is not an
> improper modification when the mortgagee will recover the late charges for the first
> month.  At the end of the plan, the mortgagee will have timely received all of the
> payments due under the note, with the exception of the first payment that came due
> after the debtor's petition was filed; and, under the plan, the debtor will have to make
> this payment, plus the late charges [associated with that first late payment], or else
> no discharge will be granted.

*Perez*, 339 B.R. at 404.  The court stated that the waiver of late charges addressed by paragraph 11

of the Home Mortgage Payment Procedures "was adopted to bar mortgagees from using existing,

or devising new, internal procedures to assess late charges over the life of the plan and then, at the

end of the plan, presenting the debtor with a bill for these charges under the pretext that these

assessments have some valid basis under the loan documents." *Perez*, 339 B.R. at 404.  And because

the foregoing provisions "in no way reduce the amount of the monthly installments due under the

note held by the mortgagee nor do they reduce the secured amount of the mortgagee's claim[,]" they

do not improperly modify the creditor's rights or the way in which those rights are exercised. *Perez*,

339 B.R. at 405.

On the other hand, as touched on by each of these cases, any attempt to alter payment

amounts, interest rates, or other specific terms set forth by the loan documents is an improper

modification of rights, expressly prohibited by § 1322(b)(2).  *See also In re Hussain*, 250 B.R. 502,

510-11 (Bankr. D.N.J. 2000) ("Any proposed change in the contractual rate of interest and/or

extension of payments beyond the original maturity date . . . does not constitute 'maintenance of

payments.'  Courts have concluded that [a] change in the amount of the monthly payments hardly

constitutes 'maintenance of payments.'  The phrase connotes an absence of change.") (quoting *In

re McGregor*, 172 B.R. 718, 721 (Bankr. D. Mass. 1994)).

The court finds that language in a Chapter 13 plan burdening mortgagees with procedural

obligations over the life of the plan does not, *per se*, violate § 1322(b)(2)'s anti-modification

provision and is permissible and even desirable.  Thus, the fundamental question to be addressed is

whether all or a portion of the language in Section 12(a) of the Debtors' Proposed Plan constitutes

18

an impermissible modification of Beneficial's rights under the terms of the March 22, 2001 Loan Repayment and Security Agreement and Deed of Trust.

## VI

With the exception of the monthly principal and interest maintenance payment of $1,262.37 and the amount of the arrearage claim, approximately $13,000.00,[10] to be paid in full in monthly installments of $260.00 at "0.00%" interest, Beneficial objects to the entirety of Section 12(a) of the Proposed Plan. The court will address each disputed plan provision separately.

## Proposed Plan
## Section 12(a)

### A

Section 12(a) of the Proposed Plan provides that "the Trustee shall not pay any future mortgage increases or decreases due to escrow and interest rate changes, unless the plan is modified to change such amounts." PROP. PLAN at 3. This requirement cannot stand if for no other reason than this language seeks to impose an obligation upon Beneficial with which it cannot comply. Section 1329 of the Bankruptcy Code allows, under specified circumstances, for the modification of a confirmed Chapter 13 plan "upon request of the debtor, the trustee, or the holder of an allowed unsecured claim." 11 U.S.C. § 1329(a) (2005). As the holder of a secured claim, Beneficial would have no standing to propose a modification to the Debtors' confirmed plan to accommodate any post-petition increase or decrease in the maintenance payment to which it might be entitled. Thus,

---

[10] *See supra* n. 3.

19

any modification of the confirmed plan to account for an increased interest rate or escrow payment would be subject to the whim of the Debtors and the Chapter 13 Trustee.[11]  Such a requirement is an impermissible modification of Beneficial's rights and cannot stand.

**B**

Additionally, Section 12(a) of the Proposed Plan provides that the maintenance payments "will begin May 2007; however, the mortgage payments will not be disbursed pending payment in full of attorney fees in paragraph 4(a) above.  Any undisbursed payments will be accrued and paid under the plan as funds are available."  PROP. PLAN at 3-4.  Paragraph 4(a) of the Proposed Plan states that "Debtors' Chapter 13 attorney fees and costs shall be paid in the amount of $3,500.00* less $400.00 previously paid by the debtors[,]" subject to approval by the court following submission of an application for compensation, with the final amount to be determined by the court following the filing of an application for compensation by the Debtors' attorney.[12]  PROP. PLAN at 2.

This provision also constitutes an impermissible modification of Beneficial's rights under its contract with the Debtors and is, therefore, prohibited by § 1322(b)(2).  The Loan Repayment and Security Agreement expressly provides that the maintenance payment "shall" be paid monthly, at the address provided by Beneficial, or be subject to a late charge if received more than fifteen days

---

[11] This provision would not appear to apply to this case because, as discussed in detail *infra*, the Debtors' maintenance payment does not include an escrow payment, nor is the contract subject to an adjustable rate mortgage.

[12] Pursuant to E.D. Tenn. LBR 2016-1(b), in any Chapter 13 case in which an attorney seeks an initial fee greater than $2,000.00, the attorney must file an application for compensation, including an itemization of the work performed and stating the projected dividend to be paid to unsecured creditors under the debtor's plan.  The asterisk in the Proposed Plan references an "[a]mount to be determined by approval of fee application by Court."  PROP. PLAN at 2.

past the due date.  LOAN REPAYMENT AND SEC. AGMT. at 2.  Furthermore, the Deed of Trust

provides that "Borrower shall promptly pay when due the principal of and interest on the debt

evidenced by the Note including any variations resulting from changes in the contract rate and late

charges due under the Note.  DEED OF TRUST at 2, ¶ 1.  Nothing within these documents allows the

Debtors to suspend payments without penalty for any reason to allow payment of the Debtors'

attorney fees.

While the Bankruptcy Code does not prohibit the payment of administrative expenses,

including attorney fees, in advance of payments to creditors under a confirmed plan, neither does it

require that administrative expenses be paid ahead of the claims of creditors.  *See* 11 U.S.C.

§ 1326(b)(1) (2005);  *In re Parker*,  15 B.R. 980, 983 (Bankr. E.D. Tenn. 1981) ("Section

1326([b])(1) . . . clearly allow[s] concurrent payments . . . . The trustee may be required to pay

[administrative expenses] in full or when he begins payment on any other claims."), *aff'd*, 21 B.R.

692 (E.D. Tenn. 1982).  Here, however, the provision in the Proposed Plan deferring payment to

Beneficial until all attorney fees have been fully paid cannot be sustained over Beneficial's objection

because such language violates § 1322(b)(2)'s anti-modification provision.

In summary, attorney fees must be paid by the Chapter 13 Trustee concurrently, insofar as

Beneficial's arrearage and maintenance claims are concerned, and in accordance with her normal and

customary manner consistent with her disbursement of such fees in all Chapter 13 cases where the

confirmed plan does not require a contrary payment scheme.[13]

---

[13] Attorney fees will, however, assuming the Proposed Plan is ultimately confirmed, be paid ahead of payments
to class 6, 7, 8, 9, 12(b), and 13 creditors because the Proposed Plan provides with respect to each of these classes that
(continued...)

21

**Section 12(a)(1)**

Section 12(a)(1) seeks to impose an affirmative duty upon Beneficial to apply all payments received from the Chapter 13 Trustee that are designated "arrearage" payments only to the arrearage claim with the amount thereof to be determined by Beneficial's allowed arrearage claim, and to require that all payments be included in a "corporate advance arrearage account," which shall have a $0.00 balance upon entry of the Debtors' discharge. *See* Prop. Plan at 4.

The requirement that Beneficial apply all payments specifically designated as prepetition arrearage payments only to its allowed arrearage claim is not only reasonable but required. The Proposed Plan sets forth a specific monthly payment of $260.00 for the express purpose of curing Beneficial's $10,894.02 prepetition arrearage claim. The dollar amount of each monthly payment is sufficient to cure the arrearage claim in approximately 42 months. If the Debtors make the payments according to the terms of the Proposed Plan, the arrearage will be fully paid well before the 60-month term of the plan expires. Application of the prepetition arrearage payments for anything other than their express purpose would not only violate the terms of the Proposed Plan upon confirmation, but would create a problem at the conclusion of the case when all prepetition defaults should have been cured in anticipation of the Debtors' discharge.

---

[13](...continued)

"[p]ayment . . . will start after payment in full of attorney fees in paragraph 4(a) above." No creditor in any of these classes objected to this provision.

Imposing an affirmative obligation upon Beneficial to credit the Debtors' payments to the claims for which they are being paid does not impermissibly modify the Loan Repayment and Security Agreement and/or the Deed of Trust.[14]

On the other hand, requiring Beneficial to set up and designate payments into a specific "corporate advance arrearage account" is overreaching and unnecessary. As long as Beneficial maintains a separate accounting for application of the separate payments it receives for the Debtors' maintenance and arrearage payments and credits the payments in accordance with the Debtors' plan, it cannot be forced to hold those payments in a manner dictated by the Debtors and/or the Proposed Plan.

### Section 12(a)(2)

Section 12(a)(2) of the Proposed Plan seeks to impose an affirmative duty upon Beneficial to deem all prepetition arrearages contractually cured upon confirmation of the plan thereby precluding an assessment of default-related fees. *See* PROP. PLAN at 4. In opposition, Beneficial argues that the arrearage is only cured once it has been fully paid.[15] The court agrees that the prepetition arrearage cannot technically be "cured" until it is paid in full. However, because the amount of Beneficial's arrearage claim is fixed by its claim, the same result can be accomplished by deeming the arrearage "current" at confirmation.

---

[14] As previously noted, the Debtors' treatment of Beneficial's arrearage claim is not subject to the anti-modification provisions of § 1322(b)(2). Rather, it falls under the ambit of § 1322(b)(5). *See* 11 U.S.C. § 1322(b)(5); *Nobleman*, 113 S. Ct. at 2110 ("[Section 1322(b)(5) is] . . . outside § 1322(b)(2)'s prohibition.").

[15] This provision again mentions the "corporate advance" account, which the court has already determined to be impermissible.

23

According to the Joint Stipulations and the proof of claim filed by Beneficial, the arrearage claim is $10,894.02, consisting of past due payments for August 2006 through March 2007.[16]  JT. STIPS. at ¶ 6.  Upon the filing of their bankruptcy case, all past due installment and default amounts owed under the Loan Repayment and Security Agreement became just that – the Debtors' prepetition arrearage, for which Beneficial has filed a claim in the Debtors' bankruptcy case.  Were it not for the imposition of the automatic stay restricting Beneficial's authority to exercise its rights under the Loan Repayment and Security Agreement and/or the Deed of Trust with respect to the Debtors and their Residence, Beneficial would have the right to foreclose based upon those past due defaults.

However, once the Debtors filed their bankruptcy case, the prepetition arrearage amount was fixed as of February 14, 2007, the date upon which the case was filed.  Based upon § 1322(b)(5), the Debtors are authorized to cure their prepetition defaults by paying, in full, the amount of the arrearage claim.  *See Nobleman*, 113 S. Ct. at 2109-10.  Any post-petition assessment of late fees and charges on the prepetition arrearage is not authorized by § 1322(b)(5).

Accordingly, a provision requiring Beneficial to "deem" the prepetition arrearage amounts contractually "current" as of confirmation is merely procedural and requires only that Beneficial update its accounting procedures to ensure that the Debtors' account is not subject to any additional

---

[16] The Debtors filed their case on February 14, 2007, so the March 2007 payment included within the arrearage claim is actually a post-petition past due payment.  The arrearage claim also appears to include additional charges that are not listed in the attachments to the proof of claim, based upon the $1,262.37 maintenance payment as provided for by the Loan Repayment and Security Agreement, which would yield an aggregate past due total of $10,098.96 for August 2006 through March 2007.  Likewise, the itemization statement attached to the proof of claim states that the Debtors' monthly maintenance payment is $1,328.96, without explanation for the increase; however, this amount yields an aggregate balance of $10,631.68 rather than the $10,894.02 shown on the proof of claim.  Again, the court will adhere to agreed upon amounts set forth in the Joint Stipulations.

charges associated with any prepetition default.  In other words, as of the date of confirmation, as long as the prepetition arrearage is provided for in the plan and payments are made as set forth therein, Beneficial must, pursuant to § 1322(b)(5), divide the Debtors' mortgage into a "current" prepetition balance and a post-petition maintenance balance which, as of the date of confirmation, is, with respect to the arrearage claim, contractually "current." This provision addresses Beneficial's *claims*, not its ***rights***, and is not an impermissible modification under § 1322(b)(2).

## Section 12(a)(3)

Section 12(a)(3) of the Proposed Plan imposes two requirements upon Beneficial:  first, to apply all post-petition maintenance payments, whether made by the Debtors or the Chapter 13 Trustee, to the month so designated, irrespective of whether they are immediately applied to the outstanding loan balance or placed into a suspense or trust account by Beneficial; and second, to apply these payments first to outstanding post-petition interest and then to the principal balance. PROP. PLAN at 4.  With respect to the first duty, nothing within the Loan Repayment and Security Agreement and/or the Deed of Trust prohibits a requirement that Beneficial credit the Debtors' account for the month so designated, whether or not Beneficial actually applies the payment at such time.  Accordingly, this provision does not impermissibly modify Beneficial's rights.

On the other hand, the Loan Repayment and Security Agreement expressly states that all payments shall first be applied to any late charges, then to interest, and then to the principal balance, while the Deed of Trust states that all payments are to be first applied to any escrow funds, then to

25

interest, and then to principal balance.[17] LOAN REPAYMENT AND SEC. AGMT. at 2; DEED OF TRUST at 2, ¶ 3. Because Beneficial's rights under the loan documents may not be modified, the Debtors cannot mandate that Beneficial not credit any outstanding post-petition late charges before applying payments towards interest and principal, and the second requirement is an impermissible modification of Beneficial's rights under both the Loan Repayment and Security Agreement and the Deed of Trust.

### Section 12(a)(4), (5)

Section 12(a)(4) of the Proposed Plan places an affirmative duty upon Beneficial to notify the Debtors, their attorney, and the Chapter 13 Trustee in writing of any changes to the interest rate pursuant to an adjustable rate mortgage, along with an effective date thereof, with a failure to comply constituting a waiver of the rate increase until the notice is provided.[18] PROP. PLAN at 4. Likewise, Section 12(a)(5) provides the same affirmative duty with respect to changes in property taxes and/or property insurance premiums that increase or reduce the escrow portion of the Debtors' maintenance

---

[17] Once again, the court notes that although the Deed of Trust provides for payment of escrow items unless waived in writing, the Debtors' Schedule J evidences that the Debtors pay their property taxes and homeowner's insurance as part of their monthly budget, and they do not provide for an escrow payment in the Proposed Plan. *See supra* n.2.

[18] This section also provides that any failure to notify the Debtors, their attorney, and the Chapter 13 Trustee of a reduction in the interest rate constitutes a violation of § 524(i) to the extent that the Debtors suffer damages of more than $50.00. Because the Loan Repayment and Security Agreement is not subject to an adjustable rate, this subsection is inapplicable; however, as previously discussed, § 524(i) expressly applies to creditors who have willfully failed to credit payments under a confirmed plan, thus injuring the debtor. The court does not read § 524(i) as extending to the failure to provide notice of changes in interest rates.

payment with a failure to comply constituting a waiver of the right to recover any enhanced escrow payments until notice is provided.[19]  PROP. PLAN at 4-5.

The Loan Repayment and Security Agreement evidences a fixed interest rate of 13.840%, and thus, Section 12(a)(4) is inapplicable.[20]  Additionally, as previously discussed, the Debtors' budget evidences that they pay all taxes and insurance premiums directly as part of their monthly expenses, and Section 12(a)(5) is likewise inapplicable in this case.  Nevertheless, were these provisions applicable, under their express terms, Beneficial would be required to notify in writing the Chapter 13 Trustee, the Debtors' attorney, and the Debtors of any such change in the contract interest rate, property taxes, and/or insurance premiums, together with the effective dates thereof, or waive such increases until notice was provided.  Requiring advance notice in writing to the Debtors, their attorney, and the Chapter 13 Trustee from Beneficial of this information *before* implementation and payment of such increases affords the Debtors and/or the Chapter 13 Trustee time to anticipate the impact of such change and, if appropriate, time to propose a modified plan that will accommodate the change.  Since the mortgage holder is the party privy to this information, it is not unreasonable to require that entity to provide advance notice.  In fact, such advance notice is essential to the orderly administration of the plan.

---

[19] The Deed of Trust requires that Beneficial provide the Debtors "an annual accounting of the [escrow] Funds showing credits and debits to the [escrow] Funds and the purpose for which each debit to the [escrow] Funds was made." DEED OF TRUST at 2, ¶ 2.

[20] The Loan Repayment and Security Agreement contains a provision allowing for a reduction in the interest rate in the event that there are no defaults and/or bankruptcy filings.  *See* LOAN REPAYMENT AND SEC. AGMT. at 2. Clearly, this provision no longer applies.

With respect to the waiver issue, however, were they applicable, both Sections 12(a)(4) and (5) would impermissibly modify Beneficial's rights.  Specifically, the Loan Repayment and Security Agreement states that the cost of any force-placed hazard insurance "will be added to the unpaid balance of the loan . . . [and] might increase the amount of [the] final installment."  LOAN REPAYMENT AND SEC. AGMT. at 3.  Furthermore, under the terms of the Deed of Trust, Beneficial may advance any costs necessary to protect its rights in the property, including obtaining force-placed insurance, which "shall become additional debt of Borrower secured by [the Deed of Trust]."  DEED OF TRUST at 3, ¶ 7.[21]  Plan language instituting an automatic waiver of these payments impermissibly modifies Beneficial's rights under these documents.

### Section 12(a)(6)

Section 12(a)(6) of the Proposed Plan requires Beneficial to refrain from paying any prepetition tax obligations that the Debtors have expressly included in their Proposed Plan unless a motion to modify the plan is filed or the taxing authority files a notice of assignment of the claim to Beneficial.  PROP. PLAN at 5.  Initially, there is nothing impermissible about this provision with respect to prohibiting Beneficial from paying any of the Debtors' prepetition tax obligations.  As related thereto, Section 4(b) of the Proposed Plan provides that "[t]ax claims to be paid as secured,

---

[21]  The waiver language proposed by the Debtors is similar to that adopted by the Southern District of Texas with respect to a waiver of late fees if a creditor does not notify the required parties of its election concerning payment thereof.  While it is true that a mortgagee becomes aware of changes due to an increase or decrease in property taxes, insurance, and/or interest before any such increases are scheduled to take effect, and it is not an unreasonable or burdensome duty to require that a mortgage holder must notify the Chapter 13 Trustee, the debtors, and the debtors' attorneys of the changes as soon as they are known, rather than wait until the effective date or thereafter, the court notes that there seems to be a significant difference between a waiver of late fees, which are payable only to the creditor, and a waiver of increases in taxes and/or insurance premiums, which are payable to a third party and thus reimbursed to the creditor, as well as a change in interest rates, which is generally reflective of the market as a whole rather than a fee charged at the whim of the creditor.

28

priority, and/or unsecured non-priority in accordance with the filed claim, subject to objection."
PROP. PLAN at 2.  On March 9, 2007, a proof of claim was filed by the Hamblen County Clerk and
Master for delinquent property taxes attributable to the Residence for 2003 and 2004 in the amount
of $1,729.61, including interest, penalties, and attorney fees.  A proof of claim was also filed on the
same date by the Hamblen County Trustee for delinquent property taxes for 2005 and 2006 in the
amount of $752.10, including interest and penalties.  Because both of these taxing authorities have
filed claims, the payment of those claims is properly provided for in the Debtors' plan, and any
payment of these prepetition taxes by Beneficial would amount to a double payment.

As previously discussed, the provision in this section requiring the filing of a motion to
modify, with respect to Beneficial, is unduly limiting because, as a secured creditor, Beneficial may
not seek to modify the Debtors' plan under § 1329, and the provision places Beneficial at the mercy
of the Debtors and/or the Chapter 13 Trustee, which is an impermissible modification of its rights
under the Loan Repayment and Security Agreement and the Deed of Trust.

### Section 12(a)(7)

Section 12(a)(7) prohibits Beneficial from "ever assessing, charging, imposing, advancing
or billing any type of fees or charges (such as legal fees, broker price opinion fees, property
inspection fees, property preservation fees, proof of claim fees, notice of appearance fees, plan
review fees, or any type of legal fees, or any other type of fee or charge) . . . either post-petition and
pre-confirmation, either post-confirmation and pre-discharge, or post-discharge" without court
approval following the filing of an application for compensation along with an itemized statement

29

of fees charged as required by Rule 2016(a) of the Federal Rules of Bankruptcy Procedure. PROP. PLAN at 5. This section further provides that, to the extent that any fees are not approved but are provided in any type of notice to the Debtors, Beneficial will be deemed to have violated the automatic stay or the discharge injunction, whichever is applicable, and that any violation thereof is deemed a "willful violation" of § 524(i) "to the extent the improper servicing results in improper fees and charges of more than $50.00." PROP. PLAN at 5.

This entire subsection imposes an unreasonable and burdensome duty upon Beneficial. As an initial matter, attorneys for creditors are not employed under 11 U.S.C. § 327 (2005) and are not subject to the requirements of that and related statutes or Bankruptcy Rules. Pursuant to § 1322(b)(2), the security documents and underlying state law govern Beneficial's "rights" with respect to any post-petition maintenance payments, and as long as the note and security documents between the parties provides for the assessment of charges, including but not limited to late fees, attorney fees, and inspection fees, a provision limiting those rights is an impermissible modification thereof.[22]

The Loan Repayment and Security Agreement expressly provides for assessment of late charges and collection expenses, including attorney fees, just as the Deed of Trust expressly provides for assessment of attorney and foreclosure fees, which would include inspection and broker fees. *See* LOAN REPAYMENT AND SEC. AGMT. at 2; DEED OF TRUST at 3, ¶¶ 7, 19. Accordingly, the provision purporting to limit Beneficial's ability to assess such charges that are otherwise allowable

---

[22] This is not to say that such fees may not be subject to scrutiny by the court. *See* 11 U.S.C. § 506(b). Rather, it is to say that those fees have their origin under the contract signed by the debtor and not under the Bankruptcy Code.

constitutes an impermissible modification of Beneficial's rights, as are the provisos "deeming"

Beneficial in violation of the automatic stay or the discharge injunction, and in willful violation of

§ 524(i), for providing to the Debtors a notice containing any "unapproved" fees.[23]

VII

Based upon the foregoing, the court finds that the following standardized language will not

be inconsistent with the anti-modification provisions of § 1322(b)(2) and may be utilized by the

Debtors in this case and in future cases filed in this division[24] in dealing with claims secured by a

debtor's homestead and in dealing with the prepetition arrearage claims associated therewith under

§ 1322(b)(5).[25]

**12(a) MORTGAGE and/or LONG TERM LIEN** claim balances survive the plan. The Debtors own a **house and lot located at 209 Hayter Drive, Morristown, Tennessee**, which is subject to a first mortgage or long term lien held by **Beneficial Tennessee, Inc.**, and which shall be paid by the Trustee in monthly maintenance payments of **$1,262.37**. In addition to the maintenance payment, the Trustee shall pay a claim for mortgage/lien arrearage in the approximate amount of **$13,000.00**, absent an objection by the debtors, in full in monthly installments of **$260.00** at **0.00%** interest. Payments on these claims will begin in **May 2007.**

Confirmation of the plan shall impose an affirmative duty on the holders and/or the servicers of any claims secured by liens, mortgages and/or deeds of trust on the principal residence of the Debtors to do all of the following:

(1) To apply the payments received from the trustee on the prepetition arrearages, if any, only to such arrearages. For purposes of this plan, the "prepetition" arrears

---

[23] *See supra* n. 18.

[24] The procedure outlined in this Memorandum has application solely to Chapter 13 cases filed in the court's Northern Division, in Knoxville.

[25] Although this "standardized form" has broader application than to just the present case and is, in a sense, generic, the court will insert those terms in Section 12(a) applicable to Beneficial which are not in dispute.

31

shall include all sums included in the "allowed" proof of claim and shall have a "0" balance upon entry of the Discharge Order in this case.

(2)  To deem the prepetition arrearages as contractually current upon confirmation of the plan, thereby precluding the imposition of late payment charges or other defaulted-related fees and services based solely on the prepetition default or defaults.

(3)  To apply the direct post-petition monthly mortgage payments paid by the trustee or by the Debtors to the month in which each payment was designated to be made under the plan or directly by the Debtors, whether or not such payments are immediately applied by the creditor to the outstanding loan balance or are placed into some type of suspense, forbearance or similar account.

(4)  To notify the trustee, the Debtors, and the attorney for the Debtors in writing of any changes in the interest rate for any non-fixed rate or any adjustable rate mortgages and the effective date of any such adjustment or adjustments not less than 60 days in advance of such change or at such time as the change becomes known to the holder if the change is to be implemented in less than 60 days.

(5)  To notify the trustee, the Debtors, and the attorney for the Debtors in writing of any change in the property taxes and/or the property insurance premiums that would either increase or reduce the escrow portion, if any, of the monthly mortgage payments and the effective date of any such adjustment or adjustments not less than 60 days in advance of such change or at such time as the change becomes known to the holder if the change is to be implemented in less than 60 days.

(6)  **MODIFICATIONS**.  The holders of claims secured by a mortgage on real property of the debtor, proposed to be cured in section 12(a) of this plan shall adhere to and shall be governed by the following:

(A) *Prepetition defaults*.  If the debtor pays the cure[26] amount specified in section 12(a), or in such lesser amount as may be established by the creditor's proof of claim, while timely making all required post-petition payments, the mortgage will be reinstated according to its original terms, extinguishing any right of the holder to recover any amount alleged to have arisen prior to the filing of the petition.

(B) *Post-petition defaults*. Within 30 days of issuing the final payment of the cure amount specified in section 12(a), the Trustee shall serve upon the holder, the debtor, and the debtor's attorney a notice stating that (1) the cure amount has been paid, satisfying all prepetition arrearage obligations of the debtor; (2) the holder is required to treat the mortgage as reinstated and fully current unless the debtor has failed to

---

[26] The terms "cure" and "arrearage" are used interchangeably.

make timely payments of post-petition obligations; (3) if the debtor has failed to make timely payments of any post-petition obligations, within 60 days after the Trustee's notice, the holder is required to file a Statement of Outstanding Obligations, consisting of an itemization of all outstanding payment obligations as of the date of its statement, with service upon the Trustee, the debtor, and the debtor's attorney; (4) if the holder fails to file and serve a Statement of Outstanding Obligations within the required time, the holder is required to treat the mortgage as reinstated according to its original terms and fully current as of the date of the Trustee's notice; and (5) if the holder does serve a Statement of Outstanding Obligations within the required time, the debtor may (i) within 30 days of service of the Statement, challenge the accuracy thereof by motion filed with the court, to be served upon the holder and the Trustee, or (ii) propose a modified plan to provide for payment of additional amounts that the debtor acknowledges or the court determines are due. To the extent that amounts set forth on a timely filed Statement of Outstanding Obligations are not determined by the court to be invalid or are not paid by the debtor through a modified plan, the right of the holder to collect these amounts will be unaffected. No liability shall result from any nonwillful failure of the Trustee to serve the notice required by this subparagraph.

(C) *Costs of collection*. Costs of collection, including attorneys' fees, incurred by the holder after the filing of this bankruptcy case shall be claimed pursuant to section 12(a)(6)(B) above.[27]

In summary, Beneficial's Objection to Confirmation will be sustained, and confirmation of the Proposed Plan will be denied. The Debtors will, however, be given fourteen (14) days to file a modified plan or to move for conversion or dismissal of their Chapter 13 case. A hearing will be held on August 8, 2007, to consider any modified plan.

---

[27] These provisions are not cast in stone nor are they required to be included in all proposed plans. Rather, they are intended to guide debtors' attorneys in the court's Northern Division relative to the treatment of claims secured by a debtor's homestead and the prepetition arrearage associated with these claims.

An order consistent with this Memorandum will be entered.


FILED:  July 19, 2007

BY THE COURT

*/s/  RICHARD STAIR, JR.*

RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE